In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00375-CR
_____

**ROBERT CHARLES MCMULLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-08-09021-CR**

**MEMORANDUM OPINION**

Robert Charles McMullen appeals the trial court's judgment adjudicating him guilty of indecency with a child and sentencing him to ten years in prison. On appeal, he argues the evidence was insufficient to prove that he violated the terms and conditions of his community supervision. We affirm the trial court's judgment.

Background

On April 7, 2017, McMullen pleaded guilty to the offense of indecency with a child by sexual contact. The trial court deferred adjudication of guilt and placed

McMullen on community supervision for a period of seven years. The conditions of McMullen's community supervision included, among other things, that he "[h]ave no contact with persons 17 years of age or younger, unless the contact is ordered by the Court[.]" In its motion to adjudicate guilt, the State alleged McMullen violated this condition and "admitted to CSO Sarah McGinn that he was around multiple minor children at his friend's residence on or about June 25, 2017." The trial court conducted a hearing on the motion to adjudicate and McMullen pleaded "not true" to the allegation in the motion.

At the hearing, A.B. testified that McMullen is her stepfather and that in this case McMullen had pleaded guilty to indecency with A.B.'s nine-year-old daughter, C.D., by sexual contact.[1] A.B. testified that in June of 2017, she learned from her friend, J.J., that McMullen had been present around minors. According to A.B., she asked J.J. for proof, and J.J. sent A.B. a photograph from J.J.'s phone of McMullen in the same room with J.J.'s eight-year-old niece. A.B. testified that she had once been to the home depicted in the photograph. A.B. acknowledged that McMullen went to the house depicted in the photograph at least once a month and that

---

[1] To protect the privacy of the victim, we identify the victim, her mother, family members, and friends by pseudonym initials. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

McMullen and the owner of the home had been friends for at least twenty years. The photograph, State's Exhibit 2, was admitted into evidence.

J.S., J.J.'s sister and the mother of the girl in the photograph with McMullen, testified that she and her eight-year-old daughter were at a get-together on June 24, 2017. They were at the home of J.S.'s godfather, who had recently died, and J.S. saw McMullen at the home. According to J.S. she had never met McMullen before. J.S. testified that about an hour and a half after she arrived, her sister J.J. arrived and told J.S. that McMullen was on probation. J.S. testified that although there were a lot of people around, at some point she became concerned about McMullen because her daughter and another little boy that she believed was twelve or thirteen years old were there at the home at the same time as McMullen. J.S. identified State's Exhibit 2 as a photograph that her sister J.J. took while J.S. and her eight-year-old daughter, and McMullen were in the room. J.S. testified that she and her daughter "were there for maybe two-and-a-half hours."

Jennifer Turner, the court liaison for the 221st District Court, testified that she was initially assigned this case and that her duties were "mainly here in the courtroom." Turner testified that McMullen was arrested on July 10, 2017. According to Turner, the motion to adjudicate alleged that McMullen admitted to his probation officer Sara McGinn he was around minor children at his friend's

3

residence on or about June 25, 2017, but Turner explained that McGinn now works in another state. Turner agreed that even if the State abandoned the language in the motion to adjudicate that McMullen admitted he violated the condition to McGinn, McMullen would still be in violation by being around children. Turner testified that, based on her knowledge of the case and the hearing testimony, her opinion is that McMullen committed the violation. According to Turner, conditions of community supervision pertain "at all times[]" and the fact that McMullen was mourning the death of his friend at the time of the violation "is irrelevant."

Keri Rash testified that McMullen was her husband's best friend for twenty-five years. Keri testified that her husband, Herb Rash, was sick for three years and McMullen would come over and work on the house, and that the Rashes would often ask McMullen to help them prepare the house when the Rashes had family coming in to town or were planning on entertaining people in their home. According to Keri, her husband died at home on June 24, 2017. Keri testified that the day after Herb died, McMullen's wife helped her clean her house, and Keri asked McMullen to come over to do some heavy work and to get the yard prepared because "there was family coming from all over[.]"

Keri testified that no children were present at her house when McMullen arrived early that morning, and McMullen went right to work. At trial, Keri was

shown State's Exhibit 2, and she testified that the photograph was of her living room and that McMullen was depicted as being in the same room as J.S.'s minor daughter. When asked why McMullen would have been photographed in the living room that day and whether she felt his presence in the living room was appropriate, Keri testified that he was probably "hot and needed a break[,]" and that his presence was appropriate because "[h]e needed something to drink and somewhere to sit down that was cool." According to Keri, McMullen was there to help her and not to encounter children and he left soon after it was pointed out that children were present.

McMullen testified that Herb Rash was his best friend and that Herb would often invite him to his house or ask him to help with repairs or to do work at the house because Herb was ill. According to McMullen, the day after Herb's death, Keri asked McMullen to come and help and he did. McMullen testified that he did not know children would be at the house, no children were at the house when he arrived, and that he went right to work outside when he arrived. McMullen testified that he went inside to get a drink of water and sit down where it was cool and there were no children in the room. According to McMullen, he did not notice that children had entered the room, but that once it was pointed out to him that children were there, he left. On cross-examination, McMullen admitted that he was at Herb Rash's

5

house in June and that children were present, and that he truthfully admitted to probation officer Sara McGinn that he was there.

### Standard of Review

We review a trial court's decision to revoke community supervision for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). In a community supervision revocation proceeding, the State has the burden of proving a violation of the conditions of community supervision by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763-64; *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The State satisfies this burden when the greater weight of the credible evidence before the court creates a reasonable belief that a condition of probation has been violated as alleged. *Rickels*, 202 S.W.3d at 763-64. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona*, 665 S.W.2d at 493-94.

We view the evidence presented in a revocation proceeding in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex.

6

Crim. App. 1981). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

Proof of Violation

McMullen argues the trial court abused its discretion by finding that Appellant violated his conditions of probation by having unauthorized and unapproved contact with someone seventeen years of age or younger, "where the State failed to show by a preponderance of the evidence that any such contact occurred or was intentional[.]"

The trial court heard the testimony of the court liaison, Turner, testify that in her opinion McMullen violated the condition and that he admitted to his probation officer that McMullen was around minors at his friend's house in June 2017. The trial court heard A.B.'s testimony that in June 2017, she learned from her best friend, J.J., that McMullen had been present around minors, and that J.J. sent A.B. a photograph from J.J.'s phone of McMullen in the presence of J.J.'s eight-year-old niece. The trial court also heard J.S.'s testimony that she and her eight-year-old daughter were at the Rashes' home for about two-and-a-half hours, and at some point she became concerned about McMullen because her daughter and a little boy that she believed was twelve or thirteen years old were there at the same time as McMullen. The trial court was able to view State's Exhibit 2, the photograph depicting McMullen seated in the same room as J.S.'s daughter, a minor. The trial

7

court heard McMullen's testimony that he was at the home in June 2017 while children were present, and that he had admitted to being there to a probation officer.

Viewing the evidence presented at the revocation proceeding in the light most favorable to the trial court's ruling, the trial court did not err in concluding that the greater weight of the credible evidence before the court created a reasonable belief that a condition of McMullen's probation had been violated as alleged. *See Rickels*, 202 S.W.3d at 763-64. Although McMullen testified he had had no intention of encountering children at the Rashes' home, that he did not notice that children had entered the room, and that he left when it was pointed out to him that children were present, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Garrett*, 619 S.W.2d at 174. On the record before us, the trial court could have concluded that McMullen violated the condition as alleged. The trial court also could have concluded that McMullen failed to take precautionary measures to avoid contact with children at the Rashes' home in June 2017. *See, e.g., Munoz v. State*, No. 05-05-00652-CR, 2006 Tex. App. LEXIS 6971, at **2-3 (Tex. App.—Dallas Aug. 8, 2006, no pet.) (mem. op., not designated for publication) (Where trial court revoked appellant's probation because he violated condition that he have no contact with children seventeen years or younger, the appellate court affirmed the trial court's revocation and concluded that the evidence

8

showed appellant had been in contact with children without taking precautionary measures).

Viewing the evidence in the light most favorable to the trial court's ruling, we cannot say that the trial court's decision to revoke McMullen's deferred adjudication community supervision and adjudicate him guilty was so clearly wrong as to lie outside the zone of reasonable disagreement. *See Cantu*, 842 S.W.2d at 682; *Garrett*, 619 S.W.2d at 174. We overrule McMullen's sole issue on appeal and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 26, 2018
Opinion Delivered November 28, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.